UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                        Case No: 07-20417

v.

                                        Honorable Victoria A. Roberts

D-3    SERGIO MURILLO,

       Defendant.

_____/

## ORDER

## I.    INTRODUCTION

This matter is before the Court on Defendant's Motion to Vacate Sentence. (Doc. 77).

The motion is **DENIED in part,** and Defendant's motion for an evidentiary hearing is **GRANTED in part**.

## II.    BACKGROUND

On July 8, 2007, DEA agents in Michigan stopped a white pick-up truck containing approximately 11 kilograms of cocaine.  Virginia Nash drove and Juan Nunez was a passenger.

When questioned, Nash said Defendant and his brother hired her to drive from Michigan to California and back.  Nunez denied knowledge of the drugs, and said Nash was his girlfriend; however, after Defendant, his brother, Nash, and Nunez were indicted for conspiracy to possess with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 846, both Nunez and Nash cooperated with the government.

1

Nunez pled guilty and testified against Defendant as part of his plea deal. He said that Defendant and his brother asked him to accompany Nash to California in exchange for $1,000.  Nunez said he was not told the reason for the trip.

Nunez testified that Nash, her children, and Nunez drove from Detroit to California in a van and returned to Michigan in a truck.  Nunez testified that they met Defendant and his brother outside of Michigan at a park, where the brothers took the truck and paid Nunez.

Nunez also testified that he and Nash made a second trip for the brothers.   This time, when Nunez and Nash returned to Michigan, agents stopped them near Detroit Metropolitan Airport.

Nash also pled guilty and testified against Defendant under a plea agreement. She said Defendant and his brother asked her to drive to California to pick up cocaine and bring it to Michigan.  She said she made three trips.  Although she made one trip before Nunez was involved, she testified to substantially the same events as Nunez regarding the other two trips.

Defendant testified at his trial.  He admitted he knew Nash and Nunez, but denied involvement with the cocaine smuggling operation.  He said he never asked them to drive to California.

On December 10, 2008, a jury found Defendant guilty.  The Court sentenced Defendant to 120 months imprisonment on May 18, 2009 .

Defendant appealed his conviction to the Sixth Circuit.  The Sixth Circuit affirmed on September 23, 2010.

On October 29, 2010, the Defendant filed this motion to vacate.  He claims: (1)

2

he was denied a fair trial because the Government knowingly introduced false and perjured testimony to obtain his conviction; (2) his indictment was obtained with the same perjured testimony used to secure his conviction; and (3) his trial counsel was ineffective for failing to interview and call witnesses who had information concerning his innocence.  He asks the Court to vacate his conviction and sentence, or, in the alternative, to grant an evidentiary hearing on these issues.

## III.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."   To bring a motion under § 2255, a petitioner "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States,* 268 F.3d 346, 351 (6th Cir. 2001).

## IV.    ANALYSIS

### A.    False Testimony Claims

Defendant raises two prosecutorial misconduct claims: (1) prosecutors knowingly presented perjured testimony to the jury, and (2) prosecutors knowingly presented perjured testimony to the grand jury to obtain the indictment.

"To prevail on a false-testimony claim, [Defendant] must show (1) that the prosecution presented false testimony (2) that the prosecution knew was false, and (3) that was material." *Abdus-Samad v. Bell,* 420 F.3d 614, 625-26 (6th Cir. 2005).

3

Defendant says that after Nunez served his prison sentence, he returned to Mexico, contacted Defendant's family, and admitted that he testified falsely.

Defendant presents an affidavit from Nunez.  Nunez says that his attorney told him what to say when questioned by the prosecutor at trial.  He says he lied about Defendant and his brother being involved.  He says that the person who owned the cocaine and hired him and Nash was Tomas Varela Gutierrez, whom he met at Defendant's brother's garage.  He says his attorney knew the truth, but told him to say Defendant and his brother were involved because the Government believed they were selling drugs and wanted to charge them in the case.  His attorney told him if he testified as asked, he would receive 24 months; if he did not, he would receive 10 years.

The Government says that Nunez's recantation should be viewed with suspicion. It points out that Nunez only recanted after his deportation to Mexico and when he came in contact with Defendant's family.  The Government also points out that Nunez is outside the jurisdiction of the Court and cannot be subpoenaed to appear.

The Government presents an affidavit from Nunez's trial attorney, who says he did not tell Nunez what to say when questioned, and that Nunez never told him that Tomas Gutierrez owned the cocaine or arranged for its transportation.

Even if the Court assumes, for the sake of argument, that the testimony was false, Defendant is not entitled to relief; he fails to present evidence that the prosecution knew it was false.  Instead, if true, the affidavit shows that Nunez's defense counsel and Nunez knew it was false.

Defendant says it is reasonable to presume that prosecutors told Nunez's attorney what answers Nunez had to give, and Nunez's attorney communicated this to

4

Nunez.  The Court disagrees.  Defendant bears the burden to show that the prosecution knew the testimony was false.  That Nunez's attorney knew is insufficient. These claims are without merit.

**B.    Ineffective Assistance of Counsel**

Defendant says his trial counsel was ineffective for failing to interview and call available witnesses.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const., amend. VI.  This Sixth Amendment right to counsel is the right to effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 685 (1984).

The United States Supreme Court set forth a two part test to determine whether a defendant received constitutionally ineffective assistance of counsel in *Strickland v. Washington*.  First, Defendant must prove that his attorney's performance was deficient. *Strickland*, 466 U.S. at 687.  An attorney's performance is deficient if it "fell below an objective standard of reasonableness."  *Id.* at 688.  An objective standard of reasonableness is "reasonableness under prevailing professional norms." *Id.*

Second, Defendant must show he was prejudiced by this deficiency.  *Strickland*, 466 U.S. at 692.  To prove prejudice, Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  However, Defendant does not have to show "that counsel's deficient conduct more likely than not altered the outcome in the

5

case." *Id.* at 693.

Defendant says he asked his trial counsel to interview and call five witnesses who have information concerning his innocence. Defendant says these witnesses would have given testimony to establish that he was in Mexico from late June, 2007 through late July, 2007, which would have rebutted the testimony of Nunez and Nash placing him in California during the first week of July 2007 loading drugs.

Defendant attaches affidavits from each of these witnesses.

Defendant's sister-in-law says that she and her four children traveled to Mexico on June 22, 2007 with Defendant and Defendant's four children. They all stayed in the home of Defendant's mother-in-law and father-in-law, and Defendant never left for more than a few hours. She says Defendant left Mexico on July 22, 2007.

Defendant's father-in-law says Defendant came to his home in Mexico on June 22, 2007 with his four children, his sister-in-law, and her four children. Defendant stayed at his father-in-law's house the entire time he was in Mexico, which was until July 22, 2007. Defendant's mother-in-law corroborates this.

Defendant's wife says her husband left for Mexico around June 19, 2007, and returned to Michigan on July 24, 2007. She says his attorney interviewed her before Defendant's trial. He told her he would call her as a witness, and she waited in the hallway during his trial. However, counsel didn't call her, and after the trial was over he told her that her testimony was not needed.

Finally, Defendant submits an affidavit of a doctor in Mexico who treated him on June 28, 2007.

The Government says this testimony would merely be cumulative, because

6

Defendant took the stand in his own defense, and testified that he was in Mexico during this time period.  The jury declined to credit Defendant's testimony, and the Government says the jury would have been unlikely to believe these witnesses either, because four of them are Defendant's relatives.  The one witness who is not related to Defendant, the doctor, can only testify that Defendant was in Mexico for one day, and not the first week of July.  Additionally, the Government says there is no reason to believe that counsel did not interview these witnesses, and the decision whether to call them is strategic. The Court disagrees.

Corroborating testimony is often important to lend credibility to a Defendant's own alibi testimony; therefore, the cumulative nature of the testimony is helpful to Defendant. *See Clinkscale v. Carter,* 375 F.3d 430, 445 (6th Cir. 2004) ("Had even one alibi witness been permitted to testify on Clinkscale's behalf, Clinkscale's 'own testimony would have appeared more credible because it coincided in important respects with those of his alibi witnesses.") (citations omitted).  Moreover, alibi witnesses are often relatives or persons close to defendants.  This fact, on its own, does not compel the conclusion that a jury would disbelieve the testimony.

If the affidavits are true, at least three of the witnesses would have corroborated Defendant's claim that he was in Mexico during the first week of July, 2007.  However, with the exception of Defendant's wife, it is unclear whether defense counsel interviewed any of these witnesses, or why he did not call them.

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."

7

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted).  Conversely, if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, no evidentiary hearing is required.  *Id.*

It is well established that under *Strickland* counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that an investigation is unnecessary. *See Wiggins v. Smith,* 539 U.S. 510, 522-23 (2003).  This "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005).

If Defendant's claims are true, his trial attorney may have performed deficiently, and there may be a reasonable probability that had the jury been presented with testimony corroborating Defendant's whereabouts, the result of the proceeding would have been different.

An evidentiary hearing is warranted.  At the evidentiary hearing, the Court will hear testimony from Defendant's trial counsel, Andrew Leone, concerning his attempts to contact or interview witnesses, and why they did not testify.  The Court will hear testimony from Defendant's wife, sister-in-law, mother-in-law, and father-in-law regarding: (1) whether they were available and willing to testify at Defendant's trial; (2) what they would have testified to; and (3) whether they spoke to Defendant's trial counsel or his investigator.

Depending on the testimony at the evidentiary hearing, Defendant may be entitled to relief.

**V.      CONCLUSION**

8

Defendant's motion is **DENIED in part**; Defendant's prosecutorial misconduct claims are without merit.

Defendant's motion for an evidentiary hearing is **GRANTED in part**. The Court will schedule an evidentiary hearing on Defendant's ineffective assistance of counsel claim. The Court will appoint counsel to assist Defendant pursuant to 18 U.S.C. § 3006A(a)(2)(B).

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 1, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record and Sergio Murillo by electronic means or U.S. Mail on August 1, 2011.

s/Carol A. Pinegar
Deputy Clerk

9